Please be seated. We're happy to hear argument in our third case, number 147096, Ussery v. Mansfield. Ms. Grand, whenever you're ready. May it please the Court, Your Honors. My name is Kimberly Grandy. I represent the appellants in this matter who are Sergeant Mansfield and Correctional Officers Dunlow and Ruffin out of a decision to deny them qualified immunity out of the Eastern District of North Carolina. The argument for today is whether the conduct of Mansfield, Dunlow and Ruffin on July 9, 2008 when they participated in a cell extraction of the appellee inmate Sammy Ussery violated Mr. Ussery's clearly established constitutional rights under the law as it existed at the time of the incident, which was in 2008 again. And the argument is that it did not. In 2008, under this Court's standards which were set forth in Norman v. Taylor, they would not give a Correctional Officer or a Correctional Sergeant a reasonable officer fair warning that their conduct violated the Eighth Amendment if they applied force to an inmate but only caused minimal injury. Can I ask you about that? I take it you agree that Norman was wrongly decided? The Supreme Court did overrule Norman with Wilkins v. Caddy. Norman was wrongly decided. Norman, in hindsight, may have been an incorrect interpretation of the Supreme Court's holding in Hudson. In other words, it was wrongly decided. It won't hurt. At least the Supreme Court agreed that Norman was an incorrect interpretation. Norman was wrongly decided. Yes. All right. So Norman was wrongly decided, and we now have Fourth Circuit law that correctly interprets Hudson. We have Fourth Circuit law, which was swayed back in Wilkins v. Caddy, which the Supreme Court reiterated what they wanted their interpretation of Hudson to be for the circuits. And so, yes, we do. No, the Supreme Court had already done that in Hudson. Norman was wrongly decided. The Supreme Court waited for reasons unknown to anyone other than its own members 14, 15 years to correct the Fourth Circuit's outlier Norman decision. Correct? Correct. Okay. And in doing so, it actually, obviously, granted and summarily reversed a Fourth Circuit decision. Correct. Okay. So if this behavior by your clients had occurred in the last year or so, you wouldn't be here arguing, at least not the way you are now. Not on this point, no, sir, Your Honor. Okay. All right. Even in light of the Supreme Court's correction of the Fourth Circuit's incorrectly decided and incorrectly reasoned Norman decision, can it actually be the case that your clients are entitled to rely on precedent that sets the standard for how much force they can use against an inmate? In other words, I understand your argument to be that you assess clearly established law as of the time the events occur. Correct? Yes, sir. But will that principle actually survive an Eighth Amendment challenge where what is at issue is the extent of the injury suffered by the victim? Am I reasonably clear? How can a correctional officer reasonably say to herself or himself, I can beat this prisoner this much under Fourth Circuit law, but not that much? Is that the kind of expectation that qualified immunity, the vagaries of qualified immunity law, are actually intended to protect against? I think that's exactly the kind of vagaries that qualified immunity is intended to protect against. Do you actually contend that in this cell extraction, your clients thought they could use more force because of Norman? That any reasonable officer would have thought we can use more pepper spray or heavier batons or we can kick a few more times as long as we don't inflict more than minimal injury? Qualified immunity entitles these officers and imputes knowledge of the case law and of the standards at the time to these officers, regardless of their actual knowledge of what the case law was. And I think to resolve your concern about the inconsistencies or the vagaries of the law, to lose the benefit of qualified immunity, an officer has to be plainly wrong about the law, not just a little bit wrong. And I think Judge Mernigan, in his dissent from Norman, correctly points out what correctional officers can reasonably assume that what Norman was meant to be, which is that an officer can use force which may be excessive so long as significant or more than de minimis injury is not inflicted upon the inmate, absent the most extraordinary circumstances. Norman did allow a fallback, a reserve, if you will, for the really vile, really repugnant behavior, which is the most extraordinary circumstances. That is not the behavior that is exhibited within the record before the court today. Therefore, the first prong of Norman is a bright line test for the absence of any, the showing of a de minimis injury, which should apply here and would have entitled or should entitle Sergeant Mansfield and Officers Dunlow and Ruffin to qualified immunity. If a federal court of appeals judge such as Judge Mernigan can, what he can ascertain from the court's holding in Norman is that an officer can use force which may be excessive but not inflict more than de minimis injury, if that was Judge Mernigan's takeaway, certainly that would be a reasonable takeaway for a average correctional officer who is imputed with the knowledge of that case law. I guess more apt for this case than leaving aside the clearly established, is it the case here that the district court concluded that there was a reasonable dispute of fact as to the severity of the injury and therefore denied qualified immunity? The court does say that the degree of injury is unclear from the record before it. However, even taking the appealee's allegations as true as what was demonstrated on the record before the district court, the district court determined that there was a bloodied face, lacerations, and a bloodstained t-shirt. No, no, no, no, no. On your appeal now, we take the allegations that the plaintiff has made to be true. The plaintiff says that he has lasting injury. The district court may not have recounted them all. The district court didn't make findings of fact about that because, at least for purposes of this interlocutory appeal now, we take what's alleged in the complaint and your proposition has to be, assuming every single injury, the lasting nature, the hearing aid, they may not be proved out, your expert may be correct that there are no lasting injuries. That there wasn't this terrible thing. But we have to assume now that the plaintiff's allegations are correct. And I'm not clear why, even if we find ourselves bound by Norman, that that isn't sufficient to deny you qualified immunity at this juncture. Because at this juncture, this court has routinely found that those sorts of injuries which were alleged by the plaintiff were classically de minimis injuries. In Norman v. Taylor, you had an inmate who was smoking a cigarette, wouldn't cooperate, officers hit him with keys, he was restrained, but he was not cooperative. In this case, you have an unrestrained and not cooperative inmate. Was he sent to the hospital in Norman? He was not, but the plaintiff in Taylor was. Was he here? I'm sorry? Was he sent to the hospital here? He was sent to the hospital here, which is analogous to the plaintiff in Taylor. Was he given pain medication? He was given pain medication. Morphine, wasn't it? It was morphine. That's pretty high, isn't it? Again, that is a subjective standard, which is... Subjective? Totally, this is subjective. These are his allegations about what happened. Correct. But you, to succeed here at this juncture, you understand this isn't a trial. This is whether you're entitled to qualified immunity. Yes, Your Honor, and again, I would refer the court back to the sorts of injuries that this court has classically held as de minimis. Perhaps being the most recent case on this issue, Williams v. Calton, where you had an inmate who had a one-and-a-half-inch laceration to the back of his head that required six stitches, staples even, to repair. And this court held that that was a classically de minimis injury and reversed and remanded the denial of qualified immunity. Well, counsel, that's a cut on the playground when I was growing up. You didn't go to the hospital, but if you did, six... But we're talking about morphine. Do you know of a narcotic high in that for dealing with acute pain? Again, Your Honor, I... It's the same thing they use in Vietnam when the soldier was down. They would just shoot him with morphine. They wore it on their helmets. That's a high narcotic for pain, isn't it? And the only evidence... Isn't it, counsel? Are you going to answer my question or just continue with your argument? The only evidence in the record... She's going to continue the argument. Go ahead. Go ahead. Yeah, I think that your answer has to be yes. Yes, it is a narcotic medication. Again... But you may think that these are trivial, and you may have your... And you may be able to prove that. But he alleges he had bilateral hearing loss, neck pain, loss of vision in his right eye, chronic swelling and loss of feeling in his hands and knees, and recurring migraines and disability. And again, mere brute force or the alleged injuries that the appellant has made are not exceptional circumstances. This court held... We're not talking about exceptional circumstances. We're talking about whether that is sufficient injury even under the Norman standard. It is not... I know what your position is, but I don't understand why you don't realize that those allegations, maybe not what ultimately comes out of trial, but that those allegations are not sufficient. Your Honor, again, this court has affirmed intentionally slamming an inmate's finger in a mail slot to be a de minimis injury. Breaking it, that's a de minimis injury. Williams v. Carlton, six staples. He says that he has... That's a de minimis injury. ...chronic swelling and loss of feeling in his hands, loss of vision, bilateral hearing loss. Those are permanent injuries. And in Wilkins, in Wilkins the inmate had alleged permanent injuries, continuing migraines, anxiety problems. And the Supreme Court reversed. And the Supreme Court reversed. But the law at the time of Wilkins, this court affirmed the district court dismissal of Wilkins' claim under Norman, saying that those were de minimis injuries. And the Supreme Court ultimately did reverse. But again, these officers, these appellants, on July 9, 2008, were entitled to act with the knowledge of the Norman standard and are entitled to the benefit of qualified immunity. So they could break a finger and inflict a laceration of it of at least six inches. What else could they do? They could beat a restrained inmate for up to three minutes. They could shove a pen up an inmate's nose and threaten to rip it open, slap them with medium force. These are all different. We don't have a case where there's a confluence of the pen and beating. There are, Wilkins v. Gaddy, unprovoked behavior. Officer comes into a cell and attacks him. Bruising, swelling ankle, back pain, headaches, high blood pressure, anxiety problems. District court dismissed. This court affirmed. Riley v. Dorton, absence of medical evidence, a restrained inmate. The plaintiff alleged that the defendant shoved a pen up his nose, threatened to rip it open, slapped him with medium force. This court held that's a de minimis injury. Your point is this plaintiff got off easy. Your Honor, the injuries that he is alleging, taking them as true, are consistent with injuries that this court has routinely held over the 14 or 15 years that you indicated at the outset of this argument as classically de minimis injuries. And again, I believe that this case, these officers are entitled to the same result as the officers in both Hill and Williams. How many of the precedents, excuse me, how many of the precedents you just listed for us, all those injuries, how many of those were appeals from the grant of summary judgment on qualified immunity as opposed to appeal, interlocutory appeals from the denial of summary judgment on qualified immunity? The Hines v. Young, which is the inmate who intentionally had his finger slammed in the mail slot, breaking it, is an affirmance of a grant of summary judgment. So the district court granted summary judgment. That's correct. Okay, what's your next case? The Stanley v. Horejka, which is bruises all over the body and a loosened tooth, that is an affirmance of a grant of summary judgment. District court granted summary judgment. That's correct. So, okay, you see the point. So here we have an interlocutory appeal by your clients where I'm not even sure we have jurisdiction, right? Because the district court says there's a dispute of material fact, apart from the clearly established point on de minimis injury, the district court seems to have said, actually, there's a dispute here over whether the injury is de minimis. Which goes to Judge Motz's point about his subjective complaint. This court has routinely held that de minimis injury is a question of law, both in Norman and in Hill, that can be resolved by the district court. Well, any question is a question of law if there's no dispute of facts. Here we have a dispute of facts. There was no dispute of facts on the record before the district court. That's why you have to take all the facts that he alleges, and you have to say, there's no dispute, I don't dispute any of those facts. And that's why putting in and relying on your expert doctor goes nowhere for you, because you cannot get an interlocutory appeal here if you're relying on that doctor. You have to take the facts as he's alleging them. And that is taking the facts as he alleges them with the aid of interpretation from the doctor. The doctor's proper opinion is based upon the records that the appellee submitted in support of his response. Meaning he didn't even examine him. Not that that would have made a difference, but he didn't even examine the guy. He'd never been in the same room with the guy. But now, looking back, again, accepting all of his allegations is true. It still is a de minimis injury. And you have to assume they're true. Don't you agree? Again, yes, we have to assume that they are true. And we do assume that they are true. For purposes of this argument, even taking all of his allegations as true, conceding that his allegations are true, the injuries at most are de minimis. Do you have anything to say about the video? The video that's submitted here, again, is a lesser showing than what was demonstrated in Hill. Scott V. Harris says we can look at the video. Correct. You have a minute and a half from the time those officers enter that cell to the time that this inmate is being carried down the stairs. And at most, you see three, possibly three blows, which may have been excessive. Accepting as true as his allegations. And may have necessitated the administration of morphine. And lasting injuries. Again, de minimis injuries. In Hill, this court took an inmate's account of a restrained cooperative inmate for up to three minutes being beaten simultaneously by the guards. De minimis injuries. And not exceptional circumstances. Here, we have the video to support that this was not exceptional circumstances. We don't have any finding by the district court about exceptional circumstances, do we? The district court did not resolve that question. So, in earlier cases when we have had no finding and there's been an appeal, we've just remanded that for consideration when the district court would ultimately resolve the case. Again, in the absence of those exceptional circumstances, the de minimis injury rule is a bright line test. And I see that I'm out of time. And I'll reserve the remainder. Okay. Thank you. Good afternoon, Your Honors. And may it please the court. My name is David Strauss and I represent the appellee in this matter. We would ask that this court dismiss this appeal for lack of jurisdiction because as the court has pointed out, the district court didn't make any findings of law that would be immediately appealable as an interlocutory appeal. All the district court here did was to decide that there was enough evidence at summary judgment for this case to create a question of fact and go forward to a jury to resolve those questions. Well, but don't we, isn't there a Supreme Court and Fourth Circuit law that says what they are entitled to on an interlocutory appeal is a finding about whether the facts taken in the best light for you survive. Whether they're entitled to qualified immunity, taking the facts in the best light for you. And the district court had to have made that determination or it wouldn't have denied summary judgment. Yes, and I think that... Yes, that's correct. I think it's a very tricky issue to sort out what parts of a decision are questions of law versus those which are questions of fact. Because as you pointed out, qualified immunity analysis generally involves both mixed questions or questions of law and fact. And I think that, yes, the court is entitled to review that one limited portion. But to the extent that the appellants are asking this court to go further than that and reweigh the facts as in contrary to the way that the district court viewed those facts, they're not entitled to have this court do that at this juncture. That would be impermissible as an interlocutory appeal. The court here, I think if you read the order very carefully, says and was careful to say that they weren't making a legal determination about whether the defendants were entitled to qualified immunity or not. As we've argued in our brief, the district court was merely stating that we had put forward enough evidence at that point in time to go forward to trial. And I don't think that the court at this point in time should weigh in without the record being more fully developed as the district court judge indicated was necessary before making a determination about the ultimate outcome of qualified immunity. But should this court decide to go further and hear this appeal, I think that it's clear that Mr. Ushry has put forward enough evidence to survive summary judgment, even with the defense of qualified immunity under the pre-Wilkins standard. I think, Judge Davis, you pointed out very well that the old standard let an officer escape liability if they were lucky enough not to have done some severe injury to the person. But it wasn't as if officers were behaving with that in mind when they interacted with an inmate like, I can deliver one more blow and now I've got to stop because... I don't know. Well, I think that the old standard left it such that luck was the determination and it's something that is looked back on in hindsight. You know, if one of the officer's blows in this case had a chance to fracture an eye socket or something like that, then clearly we wouldn't be arguing about whether or not there was a de minimis injury. But the fact of the matter is he still did suffer severe pain. He was still severely beaten and he was the victim of excessive force. And I think that the officers, when they engaged in that conduct, knew very well that they were engaging in force that was excessive. And furthermore, I think we can ascertain whether or not the officers knew their behavior was reasonable by looking at the video and seeing that, really, there were only two officers in a group of many who were applying the type of beating that rose to the level of excessive force. The other officers merely carried out their duties as they were supposed to under the cell extraction policy. One officer is seen on the video immediately throwing punches. No other officers who were in the cell are seen to do that, which indicates that that sort of behavior was unreasonable of a correctional officer. Sergeant Mansfield is the other perpetrator of the excessive force as he is not supposed to involve himself in the cell extraction unless, to quote him from the joint appendix, all hell is breaking loose and it appears that the inmate's going to come out of the cell. At the point in time where Sergeant Mansfield enters the cell and begins to move up and down, it is true that you don't see exactly what he's doing, and he is alleged that he was moving debris out of the way. We're here as the non-movement, so we're entitled to the facts construed in the light most favorable to us, which is that he was stomping on Mr. Ushry's head,  and so, again, the fact that the other officers were not acting that way seems to indicate that Officer Mansfield knew that his behavior was unreasonable, even in the pre-Wilkins era. We also would argue that these injuries, compared to those cited by the appellants, are more than de minimis. In all of the cases that appellants cited, in addition to the fact that those were affirmances of a grant of qualified immunity, when they got to the summary judgment stage, the plaintiff in those cases wasn't able to proffer evidence to support their allegations. Again, here, Judge Boyle at the District Court found that there was evidence proffered by Mr. Ushry to at least create a question of fact that should go to a jury  If qualified immunity was granted, then they didn't have to go to trial? So it wasn't like their proof failed at trial? No, but part of the reason that they were granted qualified immunity is because the injury that they presented to the court was de minimis. The result in the lower court is different here, that's true. Right. And we would like to also address the issue of the extraordinary circumstances. Was that briefed or argued below? That was argued below. And we did include a transcript of the summary judgment hearing because that wasn't fully briefed. Excuse me, did you mean briefed out to the court? Yes, we addressed that in our brief to this court. But to the District Court, did you address that? No, we argued that at the summary judgment hearing and Judge Boyle found some credence to that argument. We included the transcript because of that reason of it not having been briefed out in the court below. But with regard to the extraordinary circumstances, I think that we would agree with the appellants that this court's precedent has found routinely that mere brute force is not the type of conduct that's repugnant to the conscience of mankind. However, this particular assault was not just a sort of one-off because there was a disagreement or some altercation that broke out. What happened in this cell extraction was the end result of several weeks of mental and emotional torture perpetrated by one of the defendants, Sergeant Mansfield. The dispute between Sergeant Mansfield and the plaintiff, Mr. Ushry, began many weeks before this assault when Sergeant Mansfield was making his rounds and got into a conversation with Mr. Ushry about the upcoming presidential election of then-candidate President Barack Obama. There was some racial language used by Mr. Mansfield. Mr. Ushry also had some choice words for Mr. Mansfield, and a running hostility broke out between the two men. Mr. Mansfield then used his position of authority to basically torment Mr. Ushry by tossing his cell every time Mr. Ushry went out for one of his few trips outside of the cell. And I think actually it's important to note that Mr. Ushry was confined to solitary confinement during the entire relevant period of this lawsuit, and so Mr. Ushry could not come out of his cell. So what do you want us to say if we send this back? What would you have us say about extraordinary circumstances? I would have this court say that it is reasonable to consider mental and emotional trauma that is relevant to the altercation. I think that the rule is a good rule that we don't want correctional officers to be afraid to use force in situations where it's necessary, but I think it is relevant for a court to consider whether the brute force was brute force that got out of hand, or if it was brute force that was a sort of planned end result of a disagreement. I'm not sure how much help that would give the district court on remand. I have to say, I'm looking through, I don't see where you argued this below. Do you have a record? Yes. Nobody argued it. In one of my efforts, Williams v. Benjamin, we sent it back. The absence of briefing and argument and a factual record bearing on the issue. I will leave through as I argue, but I would like to say I recall that we brought it up in the context of the fact that this particular incident got referred to the State Bureau of Investigation. That's how we broached the issue with the district court to show that this was an extraordinary circumstance, that the prison officials themselves, when they reviewed the video of this incident, thought that it was severe enough to escalate it up the chain of command, and then when it reached the highest level of the prison system, to refer it outside to the State Bureau of Investigation. Does that have anything to do with the animus between the plaintiff and the officer? Or was it just on the basis of what they could see in the video and the reports that were prepared? You know, I can't speak beyond the record, and so I'm not sure whether it was solely based off of the shocking nature of the video, or if they were aware. The way that the prison functions a lot of times, if there was a running hostility between someone at the level of a sergeant and a particular inmate in a solitary confinement unit, the other administrators in the prison would be aware of that conflict and, in fact, in many circumstances they would do something to sort of de-escalate that, maybe reassign that sergeant or transfer out the inmate. That didn't happen here. So I can't say for a fact whether or not that was part of the calculus in referring this to the SBI in this case, but it may very well have been. Well, can you help Judge Motz? Can you locate the portion that you have in mind? You were there, right? Yes, I was. You're not imagining it. No, no, I don't believe so. I think it's at the Joint Appendix 1 and our argument... Joint Appendix 1? There's two... Volume 1. Volume 1, yes. And what's the JA reference? JA 77, about halfway down that first page. We talk about them being more than de minimis, and I don't think I used the phrase extraordinary circumstances, but I think the district court was aware that what we were implying was that the factual circumstances surrounding this particular use of force were the type of extraordinary circumstances. I'm not sure that you have a claim for extraordinary circumstances, but it strikes me that you kind of have to use the words. Anyway. Well, yes. Regardless of the extraordinary circumstances, we do feel that we have put forward enough evidence to show that Mr. Ushry's injuries were more than de minimis, at least for the purposes of qualified immunity. And this court has also found, in some cases, in favor of a plaintiff who had similar injuries. You know, the appellants have cited the court to a list of cases where seemingly similar injury was found to be de minimis, but there are cases from this circuit in which similar injuries were found to be more than de minimis, even under the pre-Wilkins standard. And so I think that... So what's your best case? I think our best case is Sawyer v. Asbury, which we are probably going to file a supplemental brief because that was not included in either of our briefings. All right. You want to give us the site? Yes. It's 537 Fed App APPX 283. Oh, it's not reported? No, Your Honor. What's your best reported case? I would say we have... It's kind of sad, isn't it? I mean... We're sitting here picking over the remains of beaten prisoners in past cases under wrongly decided law to figure out... It's very sad. I'll leave it at that. Yes. How many broken bones? How many bruises? How large a laceration before a prisoner can get past a motion to dismiss or a motion for summary judgment? And I would say that that being the case, our best case is Sanders L v Spielman, which is at page 16 of our brief, where bruises, a black eye, and continuing elbow pain for 30 days following an argument was not the minimus. But you're right. The case law is not very good in the Fourth Circuit under the pre-Wilkins era, and it is sad that a correctional officer could potentially have said, well, as long as I don't leave some sort of terrible injury on this person, I'm going to be able to met out punishment. However... There's a longstanding principle, of course, that a court applies the law in effect at the time of its decision. And I take it qualified immunity jurisprudence and the clearly established law principle is an exception to that, correct? Yes. And so you agree we're bound by Norman here? Unfortunately, I do think we are bound by Norman in this case. There's no exception to the exception that... If there is an exception to the exception, I don't know. I would say that... A case can't be so wrong that we can ignore it? We have Fourth Circuit law going the other way. We do have Fourth Circuit law going the other way. And for qualified immunity purposes, it's the law of the circuit and the law of the Supreme Court. And although the Fourth Circuit was getting it wrong, the Supreme Court did, in Hudson v. McMillan, lay down a fairly clear principle that, you know, the nature of the force was a factor to be considered. So is the subsequent... Well, I guess the answer is clearly, if a panel interprets Supreme Court precedent incorrectly, future panels are bound by that until the Supreme Court fixes it, right? Or the in-bank court fixes it. Yes, Your Honor. Unless... If we had any room, there has been a court before us in a published opinion. I can't come up with it right now. It has come up a couple of times. But there is a published... Yeah. That says that it's... Yeah. But again, you know, as we've said here, I think that even being bound by that precedent, this case can be distinguished from those cases where the injuries were found to be de minimis because, again, those plaintiffs were not able to put forward any evidence of their injury. Our plaintiff did go to the emergency room. He did receive morphine at the emergency room and then was written a prescription for narcotic pain medication to take back to the prison with him. The hospital requested to see him for a follow-up visit in two days, which he didn't get to have. And I would like to clarify actually something that was said in the appellant's brief, which is that Mr. Ushry refused medical treatment and then later asked to be taken to the hospital. That's not the case. A prisoner in solitary confinement doesn't have the luxury of asking to be taken to an outside hospital. The prison medical staff evaluates that person and determines whether or not that particular facility can provide the level of care that they need. And clearly here, where he was referred out to Birdie Memorial Hospital, they could not do the necessary... How do we know that from the record? We don't know that from the record, Your Honor. Is there any other area of the law, constitutional, statutory, common law, where the character of the injury is a part of the claim? What do you mean exactly, Your Honor? In other words, you know, you get hit by a car. Injury or damage is a part of a tort claim. But even in a battery involving spitting on somebody, you know, the law presumes nominal damages for a battery. Is there any other area of the law, other than the four circuits, now outdated and overruled and abrogated, Norman opinion, where the injury itself determined the existence of the claim? I'm not aware of any, Your Honor. Well, excessive force claims, the nature of the injury determines whether you have a claim or not, right? Right. Well, maybe I misunderstood what you were asking. Maybe I did. Maybe I did. Never mind. Yeah, you know, again, we would just go back to the fact that, you know, we have here put forward record evidence. And then as far as the lasting injury, I did want to clarify that. You know, under the pre-Wilkins era, I don't think it's necessary. I didn't read the cases to require there to be a lasting injury for the injury to have been significant. Well, he alleges that lasting injuries, though. He does. He does. And I just wanted to distinguish that because if we go to trial and Mr. Ushry is unable to prove that he had lasting injury, but is able to prove that his injuries immediately after the result were severe, we think that... Well, that's something for the trial judge to determine if you go to trial. Very well, Your Honor. Yes, so we would just finish by saying that we do have evidence in the record that the injuries were lasting. You know, the appellants are asking this court to re-weigh the evidence and view it in a light most favorable to them. And Mr. Ushry has put forward enough evidence to survive qualified immunity at the summary judgment stage. Thank you. Thank you. Ms. Grandy, do you have rebuttal? May I please support, Your Honors? Getting back to the cases that you just asked the appellee's counsel about, Sawyer v. Asbury, which is a not reported case, was a completely different case. It was a pretrial detainee. The allegations, he suffered a broken nose, was treated at a hospital. The allegations and the evidence that was submitted on videotape in this court construed the videotape under Scott. He was grabbed by the arm, slammed against the wall, grabbed by the throat, struck in the face, and this went on for a period of about three minutes. That is not the kind of force that is demonstrated on the videotape in this case, nor is it the kind of injuries. I think sort of buried, and I don't mean to use that word pejoratively, but buried in your brief seems to be an argument that the amount of force used here was reasonable as a matter of law, and yet you haven't teed that up. Are you not pressing that? You've chosen, which is certainly fine if that's what you want to do, but you're arguing de minimis injury rather than, yeah, he was injured, but your client used the force that was necessary to extract him. That's correct, Your Honor. What is correct? Your characterization of my argument, that this court has the authority to decide just that. First, that it's a de minimis injury, and second, even if it wasn't a de minimis injury, that it is a reasonable amount of force, and this court did that in Taylor v. McDuffie. Why didn't you tee it up that way for us? I don't quite understand it. It is because the reasonableness of conduct was not argued to the lower courts. By you. Again. I guess my question is, why didn't you go to the district court and say, Judge Boyle, yes, he was injured. We regret it. The morphine indicates he had some pain, but my clients did what they needed to do. Wouldn't that have been easier? Maybe one of the reasons you didn't do it was because there had been the state investigation suggesting that it wasn't necessary. It was almost a criminal prosecution here? There was a state investigation which looked into possibly pursuing criminal charges. However, the district attorney and the State Bureau of Investigation could not conclude which officer of any of the nine officers that were present at the scene inflicted the blows, which Mr. Ussery is now claiming to be excessive. And which you impliedly agree were excessive. That's correct. For purposes of this appeal, we have to agree that they are correct. Again, this court in Taylor v. McDuffie declined to accept what is now the standard, which is the malicious and sadistic state of mind and the wantonness argument. This court said that the state of mind did not matter and it held that first, Taylor had a de minimis injury, and second, that even if he had more than a de minimis injury, that the officer's actions were reasonable and justified and it was not exceptional circumstances. Counsel, isn't it correct that... I appreciate the difficulty of whether or not the jurisdictional question are the remaining fact questions. And sometimes we look at cases and we disagree or we call it jurisdictional and we just deny it. But the only way you win here, don't you agree, is that there are no... Given all the inferences in favor of the appellees here, that there's no evidence that would support a finding at this point that the de minimis injury question is a fact, still a fact question. You have to find there's nothing that would justify the district court's ruling that that's still a factual question yet to be resolved. Correct, Your Honor. And you can't do that. There's nothing... Not that you disagree with it, you have to say there's nothing that would support that. And we can see today that accepting as true the plaintiff's, the appellee's version of facts, it still only demonstrates a de minimis injury. And again, let me differentiate another case that was brought up by the court, Judge Motz, as a district court judge in Sanders L. when you were here in Maryland. My husband. I apologize. Don't blame her for that. I apologize. You found differing versions of facts, and that's why it was not a de minimis injury. My husband did a ruling for the prisoner. That's a pretty good measure. The plaintiff in that case alleged that he was beaten and assaulted. The defendants alleged that he had slipped and fallen and incurred those injuries. And so because of the two differing versions of facts, that is why the summary judgment was denied and the government didn't appeal. Here, we are conceding to his version of facts, and those facts only demonstrate de minimis injuries. And under Norman, as demonstrated by your holdings in Hill and Williams v. Carlton, this court is bound by the bright-line rule of Norman, which is de minimis injuries absent the most extraordinary circumstances, the most extraordinary circumstances, which are humiliation... Not just any old extraordinary circumstances. Humiliation, degradation, torture, forcibly injecting psychosis-inducing drugs, lashing with whips, hanging from trees. Those are the examples that the Supreme Court gave in Hudson, and this court used them in Norman. If you lost hearing in one of your ears, would you call that de minimis? I'm sorry? If you lost hearing in one of your... That was not a judge. What did you say? Already happened, Judge. See, I think we're all... And he has not claimed a complete loss of hearing due to these actions. He has claimed an exacerbation of hearing loss due to these... Well, same thing. To the point where it used to be poor hearing, now it's no hearing in one ear. Would you in any stretch call that de minimis? I know you had to represent your client, but could you really? In this case, it is de minimis. Oh, because it's him? The exacerbation, again, that was considered by the court, the district court in Wilkins, without support to demonstrate the level of what the injury was before and what the injury was after the incident, this court affirmed in Wilkins that those are de minimis injuries, claims of exacerbation. Again, Mansfield, Dunlow, and Ruffin were entitled to rely upon the law that was what this court said it was, which is de minimis injuries is a bright-line rule, and that is all that is demonstrated, accepting as true the appellee's arguments, and they are entitled to qualified immunity. Can I ask you one more quick question with Judge Motz's indulgence? If the petitioner in Wilkins gets the benefit of the Supreme Court's abrogation of Norman, why should a petitioner or a plaintiff who filed his action not also get the benefit of Wilkins? Quite frankly, that is a question that the Supreme Court could resolve if this case were to be appealed up, but the question that we're considering here. So if we, either in this case or in Hill, I guess was Sert saw it in Hill? I don't remember. No, sir. Anyway, so your point is if we agree with you, either now or later, that de minimis injury is what's going on here, and the plaintiff takes it up, the Supreme Court could say, Fourth Circuit, we told you that Norman was wrong, and send that case back. Then we would apply Hudson correctly? I believe the Fourth Circuit, I believe the Supreme Court, and this is just purely speculation, would say that for qualified immunity purposes, that the officers, a reasonable officer is entitled to rely upon the law that was in the circuit at the time, which entitles these officers to qualified immunity. And with that, thank you. Thank you very much, and thank you both for coming up here, too. We will come down, ask your clerk to adjourn court, and then we'll come down and greet the lawyers, and then our law clerks are going to be available to chat with you about it. We're going to conference the cases, and then we'll come back and answer any questions anybody might have, but not about these cases.
judges: Diana Gribbon Motz, Roger L. Gregory, Andre M. Davis